# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 3627 | **DATE** | 3/19/2013 |
| **CASE TITLE** | *Cosentino, et al. v. Transcend Services, Inc.* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the plaintiffs' motion to conditionally certify the class [72-1] is granted. The parties are directed to meet and confer within 14 days of the date of entry of this order regarding their positions on the contents of the form of the proposed notice and consent and the date and manner in which the putative plaintiffs' contact information will be disclosed to the plaintiffs. No more than 10 days after the meet and confer, the parties shall submit to the Court a joint position statement regarding the status of the notice and consent forms and disclosure of contact information, including authority for remaining disputed issues.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

    Plaintiffs are medical language specialists ("MLS") for Transcend Services, Inc. who work from home on their personal computers downloading medical reports for transcription or editing. Transcend employs more than 2,000 MLS across the United States (Def.'s Ex. 1, DonFrancesco Decl., ¶ 3.) The plaintiffs seek to represent a class of similarly situated employees in this collective action suit against Transcend alleging violations of the Fair Labor Standards Act ("FLSA), 29 U.S.C. § 601, *et seq*. Specifically, the plaintiffs contend that due to Transcend's enforcement of policies dealing with compensation, performance, production, timekeeping, and scheduling, they were not paid minimum wage or overtime as required by the FLSA.

<u>Motion to Strike</u>

    Transcend moves to strike the declarations submitted by the plaintiffs in support of their motion for conditional certification on the ground that the plaintiffs failed to turn over the declarations despite document requests and interrogatories seeking their disclosure. Specifically, on July 27, 2012, Transcend served a document request asking for "[a]ll documents . . . including, without limitation, any affidavits or testimony existing in any written . . . form, constituting or otherwise evidencing any statement made by any party." (Def.'s Mot. Strike, Ex. A, Dkt. # 81-1, ¶ 32.) In addition, in its first set of interrogatories, Transcend asked the plaintiffs to identify any individuals who had any knowledge of the allegations in the complaint (Def.'s Ex. B, ¶ 3) or with whom it had had communications regarding the allegations. (*Id*. ¶ 5.) The plaintiffs produced no declarations, and Transcend saw them for the first time as exhibits to the plaintiffs' motion for conditional certification. Moreover, they failed to name Stacey Kirsh, a former Team Leader for Transcend, upon whose declaration the plaintiffs also rely. Under Federal Rule of Civil Procedure ("Rule") 37(c), "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

    The plaintiffs claim the declarations were not turned over because they are attorney work product. But

**STATEMENT**

the plaintiffs did not turn over a privilege log, thus giving Transcend the ability to challenge the assertion of the privilege. In any event, the plaintiffs fail to demonstrate that the declarations contain attorney impressions and are therefore subject to the work product privilege. *Camilotes v. Resurrection Health Care Corp.*, No. 10 C 366, 2012 WL 245202, at *7 (N.D. Ill. Jan. 25, 2012) ("Defendants have failed to establish that the signed declarations are protected from disclosure by the work product doctrine, which protects attorney impressions but does not protect non-privileged facts."); *Tuttle v. Tyco Elec. Installation Servs., Inc.*, No. 2:06-cv-581, 2007 WL 4561530, at *2 (S.D. Ohio Dec. 21, 2007) ("Affidavits are normally not protected by the work product doctrine for the very reason that an affidavit 'purports to be a statement of facts within the personal knowledge of the witness, and not an expression of the opinion of counsel.'") (citation omitted).

The plaintiffs seek to deflect responsibility for their failure to fully and completely respond to the discovery requests by arguing that the failure was harmless. The Seventh Circuit has identified factors in determining whether non-compliance with Rule 26 is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012). While the plaintiffs willfully withheld the declarations, Transcend appears to have known that the plaintiffs would be submitting the declarations in support of their motion and indeed, referred to the declarations in communications with the plaintiffs' attorneys and during the plaintiffs' depositions. (Pls.' Resp. Mot., Dkt. # 89, at 3-4.) Indeed, not only is it common practice but it is essentially a requirement that plaintiffs provide declarations in support of a motion to conditionally certify a class and send out notice to putative class members. This factor weighs in favor of concluding that the omission was harmless.

Transcend, however, notes that several of the declarations were executed before Transcend took the declarant's deposition (Transcend's Mot. Strike, Dkt, # 81, at 4.) Thus, Transcend argues that it was not able to question those witnesses with respect to the statements made in their declarations. This is particularly prejudicial, Transcend contends, because several of the witnesses, including Deborah Waldman, Patricia Clunk and Joy Bargerstock, made statements in their depositions contrary to what was contained in their declarations. (*Id*. at 5-6.) Ms. Waldman acknowledges in her declaration that she "inadvertently" testified at her deposition that hours she recorded in Transcend's timekeeping system included time spent performing non-"hands on keyboard" duties. However, the Court has reviewed the purportedly contradictory testimony of the other two witnesses and does not find it to be so inconsistent that the failure to question the witnesses about it was prejudicial to Transcend. As to Stacey Kirsh, a former Transcend employee from whom the plaintiffs obtained a declaration, the Court comes to the same conclusion. While Ms. Waldman's declaration differs from her deposition testimony in one respect, the Court finds overall that Transcend was not surprised by the declarations and has the ability to cure any prejudice by challenging the content of the declarations in response to the motion for conditional certification. While the Court in no way condones the plaintiffs' willful withholding of the declarations, the Court concludes that the error was harmless and therefore, will not exclude them from use by the plaintiffs.

<u>Motion to Conditionally Certify</u>

FLSA claims may be pursued through a collective action on behalf of the named plaintiffs and similarly situated workers. 29 U.S.C. § 216(b); *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010). Generally, courts considering whether FLSA claims may proceed as a collective action use a two-step process. *Larsen v. Clearchoice Mobility, Inc.*, No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. Jul. 25, 2011). First, the court considers whether to conditionally certify a class. To obtain this relief, a plaintiff must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL 2079585, at *2 (N.D. Ill. May 24, 2010) (citation and internal quotation marks omitted). "If the plaintiff meets this light burden, the court conditionally certifies the class, and notice is sent to potential class

| STATEMENT |
|---|

members, giving them an opportunity to opt into the suit. At this stage, the court does not resolve factual disputes or decide substantive issues going to the merits." *Larsen*, 2011 WL 3047484, at *1. Second, after the parties have had an opportunity to pursue discovery and the opt-in process is complete, the court must reevaluate certification using a more rigorous standard. *Id.*

In support of their contention that they were similarly situated and subject to a common policy or plan that violated the FLSA, the plaintiffs point to fourteen declarations from current and former MLS located in twelve different states, who all indicated, among other things, that they understood that MLS would not be paid for time not spent on the keyboard. (Pls.' Exs. 71-1 through 71-15.) These declarations also included the following testimony: (1) they were all subject to the same production-based compensation structure, which was based on the number or lines or medical reports transcribed or edited; (2) they were all held to uniform performance, quality and accuracy standards; (3) they were all subject to uniform production quotas in that to be considered a full-time employee, an MLS had to earn a minimum of $900 on gross production per pay period and work a minimum of 35 hours per week while part-time MLS had to earn a minimum of $450 in gross production per pay period while working scheduled part-time hours; (4) all of the plaintiffs and putative class members were required to keep their time on Timesaver or a similar software program accessed via the internet, and were instructed to enter only "hands on keyboard" time and not include any preparation or research time, which meant that MLS were not always guaranteed minimum wage; (5) the MLS often did not receive overtime pay or were paid overtime at less than minimum wage; and (6) Transcend subjected all of the MLS to a uniform scheduling and time flexing policy under which the MLS were expected to work a particular shift, but if there was no work during their shift, they were required to remain near their computers and continually check as to when work became available.

With respect to the instructions from Transcend regarding timekeeping and hours requirements, the plaintiffs also point to several e-mails and communications from Transcend Team Leaders and management personnel in which the MLS are directed to enter only "hands on keyboard" time or "worked" hours. (Pls.' Exs. 26, 27, 28, 29, 31, 45, 46 and 47). Certain testimony by the plaintiffs also supports having received these directions. (Pence Dep., Pls.' Ex. 54 at 41:12-14; Edwards Dep., Pls.'Ex. 34 at 59:24-25 to 60:1, 114:2-7; Lugo Dep., Pls.' Ex. 22, Vol. II at 35:8-9.)

Transcend claims that the circumstances among the various MLS differed so that they cannot be considered to have been subject to the same policy and procedure. Indeed, much of Transcend's 30-page response brief addresses the inconsistencies between the plaintiffs' and opt-ins' work situations and their varying interpretations of Transcend's policies and procedures. (Def.'s Resp., Dkt. # 90, at 10-22.) But, inquiry into the specific differences among the putative plaintiffs is premature at this stage. *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 751 (N.D. Ill. 2010) ("Defendant's argument regarding job inconsistencies has been presented at the incorrect stage of FLSA class certification. In arguing that this Court's 'similarly situated' analysis should presently focus on the day-to-day work activities performed by each class member, Defendants jump ahead to a more exacting standard at step two that is not appropriate at the step one analysis.").

Transcend also argues that its policies and procedures do not violate the FLSA. But a discussion of the merits of the plaintiffs' claims is not an appropriate consideration at the conditional certification stage. *Brand v. Comcast Corp.*, No. 12 C 1122, 2012 WL 4482124, at *7 (N.D. Ill. Sep. 26, 2012) (on motion for conditional certification, noting that "[t]he question of whether Comcast violated the FLSA with its on-call policy at the 112th facility is a question for another day").

Finally, the Court notes the Seventh Circuit's recent decision in *Espenscheid v. DirectSat USA, LLC*, --- F.3d ----, 2013 WL 407446 (7th Cir. Feb. 4, 2013), in which it affirmed the district court's decertification of several subclasses of home satellite technicians based on the difficulty of computing damages for over 2,300 individuals who worked on a piece-rate basis, *i.e.*, "so many dollars per job." *Id.* at *2. The Court will address this issue, if necessary, at the next step of the certification process.

**STATEMENT**

    Notwithstanding Transcend's arguments to the contrary, the plaintiffs have satisfied the requirement of making a "modest factual showing" for conditional certification. *AON Corp. Wage & Hour Emp't Practices Litig.*, No. 08 C 5802, 2010 WL 1433314, at *9 (N.D. Ill. Apr. 8, 2010) ("This uniformity [in tasks performed on the job], when considered with other allegations that he and the other New York PMU employees were improperly classified as administrative employees, regularly worked in excess of forty hours a week, and were not compensated for overtime are enough for us to make a preliminary determination that Craig and others at the New York PMU were subject to a common policy in violation of FLSA."). Accordingly, the plaintiffs' motion to conditionally certify the class [72-1] is granted.

    The plaintiffs also seek approval of the proposed notice and consent forms and seek disclosure of the putative class members' contact information. Transcend objects to the proposed notice on several grounds. The parties are directed to meet and confer within 14 days of the date of entry of this order regarding their positions on the contents of the form of the proposed notice and consent and the date and manner in which the putative plaintiffs' contact information will be disclosed to the plaintiffs. The Court strongly encourages the parties to come to agreement on these issues. No more than 10 days after the meet and confer, the parties shall submit to the Court a joint position statement regarding the status of the notice and consent forms and disclosure of contact information, including authority for any remaining disputed issues.